UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RANDY BROWN**, <br><br> Plaintiff, <br><br> v. <br><br> **NATIONWIDE MUTUAL INSURANCE COMPANY**, <br><br> Defendant. | Case No. 24-cv-2691 (CRC) |

## MEMORANDUM OPINION

In 2016, a pipe broke underneath Plaintiff Randy Brown's kitchen sink, causing flooding and water damage to his District of Columbia residence. Brown contacted his insurer, Defendant Nationwide Mutual Insurance Company ("Nationwide"), about the proper steps for "water remediation." Because Brown has a disability that impairs his executive functioning, he asked Nationwide's claims adjuster to explain the water remediation process in "simple terms." But the adjuster allegedly misrepresented the standard water remediation procedures. Brown followed the adjuster's instructions, which purportedly allowed "infectious microbes" to affect his health and render his residence "unavailable." In this pro se lawsuit, Brown alleges that Nationwide's failure to effectively communicate with him violated the Americans with Disabilities Act ("ADA"), the Fair Housing Act ("FHA"), the D.C. Consumer Protection Procedures Act ("CPPA"), and D.C. common law. Nationwide now moves to dismiss Brown's complaint, asserting that it is untimely and fails to state a claim. Because all of Brown's claims are barred by the applicable statutes of limitations, the Court will grant Nationwide's motion to dismiss on that ground.

I. **Background**

The Court draws the following background facts from Brown's Second Amended Complaint ("SAC") and takes them as true for purposes of this motion.

Brown resides in Northeast D.C. SAC ¶ 11. He describes himself as having "above average intelligence" but "impaired *executive* function," which affects his memory and reasoning. Id. ¶ 2. A speech language pathologist has acknowledged that Brown has a "documented disability" and "would benefit from accommodation for deadlines and for methods of communication." Id., Ex. A at 1.

In early 2016, the P-trap under Brown's kitchen sink dislodged, which caused flooding in his basement and "humidity teeming with pathogens."[1] SAC ¶ 3. Brown informed Nationwide about both the humidity and noxious "odors of decomposition." Id. ¶ 16. He then asked Nationwide's claims adjuster to describe the available water damage services "simplistically" so as to accommodate his disability. Id. ¶ 19. That is, Brown claims that he "notified Nationwide of the need for *effective communication* about the water remediation guidelines." Id. ¶ 4.

When responding to Brown's request, the claims adjuster allegedly told him that water remediation was "not that complicated" and required only "disinfectant, garbage bags, and rags." Id. ¶ 19. The adjuster purportedly added that "[e]ven persons with a mental disability can use disinfectant to clean water contamination." Id. ¶ 24. Following Nationwide's advice, Brown purchased consumer products to fix the water damage. Id. ¶ 31. But his attempts to repair the damage were "futile[]," id., and because he was allergic to the "pathogens that had colonized

---

[1] A P-trap is the curved pipe underneath a sink that holds water to both seal out sewer gases and trap debris.

[his] home," he became ill and required medical attention, id. ¶¶ 26–27.  Brown's complaint indicates that he continues to live at the residence.  See id. ¶ 11.

In January 2024, Brown called the claims adjuster again "to request effective communication about water damage protocols."  Id. ¶ 32.  The adjuster purportedly admitted that "water extraction technology had been withheld in 'error,'" id. ¶ 6, and he apologized for not offering "air movers and dehumidifiers" back in 2016, id. ¶ 32.  Nationwide issued a revised estimate that authorized the use of air movers and dehumidifiers; Brown describes the revised estimate as "*effective communication* about . . . water damage procedures that [he] had, intuitively, requested in 2016."  Id. ¶¶ 33–34.

Approximately eight years after Brown's initial contact with Nationwide about the water damage, he initiated this lawsuit.  His initial complaint, filed in September 2024, alleged that Nationwide violated Title III of the ADA because it failed to "provide reasonable accommodations for effective communication for persons with conditions that impede their capacity to comprehend the application of rules related to the [insurance] policy."  Compl. at 8.  After Nationwide moved to dismiss the complaint, Brown filed an amended complaint that brought additional claims under the FHA, the CPPA, the D.C. Human Rights Act, and D.C. common law.  First Am. Compl. ¶¶ 104–38.  Brown then filed a second amended complaint a few weeks later, removing the D.C. Human Rights Act claim.  Nationwide again moved to dismiss Brown's complaint.  See Def.'s Mem. in Supp. of Mot. to Dismiss ("Mot. to Dismiss").

After the motion to dismiss was fully briefed, Brown submitted numerous additional filings presenting both new claims and additional evidence in support of his existing claims.  The Court advised Brown that it "will not consider additional claims or evidence submitted for the first time after briefing was complete."  Dec. 22, 2025 Min Order.  Notwithstanding the Court's

3

admonition, Brown has since filed multiple sur-replies with exhibits and a motion to stay proceedings so that he could obtain counsel "to prepare an organized brief." See Pet. for Reconsideration and Mot. to Stay Proceedings ("Mot. to Stay") at 1.

## II. Legal Standards

A defendant may raise an affirmative defense—including the statute of limitations—in a pre-answer motion. See Jones v. Bock, 549 U.S. 199, 215 (2007); Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998). Motions to dismiss based on a statute of limitations defense are "generally disfavored," and "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." Doe v. Kipp DC Supporting Corp., 373 F. Supp. 3d 1, 7 (D.D.C. 2019) (quoting Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per curiam)); Stewart v. Int'l Union, Sec., Police & Fire Pros. of Am., 271 F. Supp. 3d 276, 280 (D.D.C. 2017) ("Because a statute of limitations is an affirmative defense, the plaintiff need not allege facts establishing the timeliness of her claim." (citations omitted)). However, dismissal may nonetheless be warranted when "the facts that give rise to the defense are clear from the face of the complaint." Stewart, 271 F. Supp. 3d at 280 (quoting Smith-Haynie, 155 F.3d at 578); see also Smith v. Brown & Williamson Tobacco Corp., 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (noting that a court may dismiss a complaint on statute of limitations grounds if "'no reasonable person could disagree on the date' on which the cause of action accrued" (citation omitted)). Courts may also dismiss a complaint with prejudice if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Firestone, 76 F.3d at 1209 (citation and internal quotation marks omitted).

A pro se complaint "is to be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers.'" Ho v. Garland, 106 F.4th 47, 50 (D.C. Cir. 2024)

4

(quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)).  Courts are to "consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss."  Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (citation omitted).  However, pro se complaints "must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ho, 106 F.4th at 50 (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**III.   Analysis**

Nationwide's moves to dismiss Brown's complaint because (1) all of his claims are barred by their respective statutes of limitations, and (2) he failed to state a claim for relief.  See Mot. to Dismiss at 1–2.  The Court agrees that Brown's claims are time-barred and must be dismissed with prejudice.[2]

A.  Statutes of Limitations

As a general rule, statutes of limitations begin to run on "the date the cause of action accrued."  Norwest Bank Minn. Nat. Ass'n v. FDIC, 312 F.3d 447, 451 (D.C. Cir. 2002).  A claim typically accrues "when the factual and legal prerequisites for filing suit are in place."  3M Co. (Minn. Min. & Mfg.) v. Browner, 17 F.3d 1453, 1460 (D.C. Cir. 1994).  Here, Nationwide contends that the conduct underlying Brown's causes of action—its purported denial of his request for "effective communication" about water damage procedures—occurred in 2016.  See Mot. to Dismiss at 4–5.  By the time Brown brought the claims in his original or amended complaints, it says, the applicable statutes of limitations had expired.  Id.

---

[2] The Court declines to address Nationwide's alternative argument that Brown's claims fail on the merits.

*1. ADA Claim*

Brown first alleges that Nationwide violated Title III of the ADA by denying his request for "*effective communication* about water damage procedures." SAC ¶ 73.

The ADA does not contain a statute of limitations. Abreu v. Howard Univ., 93 F.4th 498, 501 (D.C. Cir. 2024). Because the statute is silent, the "settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." Id. at 502 (quoting Wilson v. Garcia, 471 U.S. 261, 266–67 (1985)). Accordingly, courts in this circuit have applied different statutes of limitations to ADA claims, depending on the nature of the claim. For example, D.C.'s three-year statute of limitations for personal injury actions applies to ADA claims "alleging discrimination based on disability." Id. (citing D.C. Code § 12-301(8)). But a four-year statute of limitations might apply if the ADA claims were only "made possible by a post-1990 enactment," Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004) (citing 28 U.S.C. § 1658), such as the Americans with Disabilities Act Amendments Act of 2008, see Dean v. Howard Univ., No. 22-cv-2445 (TSC), 2023 WL 4846626, at *3 (D.D.C. July 28, 2023).

In any case, the relevant question here is not which limitations period applies, but when it began. "The statute of limitations for ADA claims begins to run at the time when [the] plaintiff knew or had reason to know of the injury that serves as the basis of the claim." Gupta v. Northrop Grumman Corp., 462 F. Supp. 2d 56, 58 (D.D.C. 2006). Here, Brown knew that Nationwide had denied his requests for "*effective communication* about the water remediation guidelines" when he spoke to the claims adjuster in 2016. See SAC ¶¶ 4–6. At that time, Brown "confided in" the adjuster about his disability and asked him to "describe the water damage services[] simplistically." Id. ¶ 19. The adjuster purportedly denied the request, stating that

6

water remediation "isn't difficult." Id. That is, the "denial of *effective communication* to [a] person[] with disabilities" underlying Brown's ADA claim took place in 2016.[3] Id. ¶ 75. Even under the most generous statute of limitations period for ADA claims, Brown's claim—which he first raised in 2024—would be time-barred.

In response, Brown claims that he only recently "learned" of Nationwide's alleged violations of federal and D.C. law. Throughout his opposition brief, Brown compares Nationwide's purportedly-deficient response to the water damage in his residence to a different insurer's response to water damage in a friend's residence in 2024. See, e.g., Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opp'n") at 5–10, 17–20, 26–27, 30–31, 39. Brown claims that he "learned of [Nationwide's] misconduct" after observing the other insurer's "proper implementation of the industry wide standard for water remediation." Id. at 5, 39. But an ADA claim accrues when the plaintiff "knew or had reason to know of the *injury* serving as the basis of his claim," not when he "determine[ed] that the injury is *unlawful*." Long v. Howard Univ., 512 F. Supp. 2d 1, 14 (D.D.C. 2007) (emphasis added) (citations omitted), aff'd, 550 F.3d 21 (D.C. Cir. 2008). Since Brown knew that Nationwide denied his request for "effective communication" in 2016, see SAC ¶ 42, his ADA claim accrued at that time.[4]

---

[3] In his opposition to Nationwide's motion to dismiss, Brown claims that he "persisted in requesting to receive effective communication[] about the actual process to repair the damage in [his] home." Pl.'s Opp'n to Def.'s Mot to Dismiss at 3. He then cites to "Exhibit A," which he describes as a letter that Nationwide sent to him in June 2017. Id. But no exhibits are attached to his opposition, and even if he repeated his request in 2017, his claims would still be time-barred.

[4] While not directly applicable to the Court's statute-of-limitations analysis, which looks only at the complaint itself, Brown's prior litigation history confirms his knowledge that he could bring an ADA claim against Nationwide well before 2024. In a 2018 filing in another case brought in this district, Brown stated that he "requested a reasonable accommodation from Nationwide" under the ADA. See Pl.'s Request to Join Nationwide Mutual Ins. Co. (ECF No. 91) at 5, Brown v. JP Morgan Chase, No. 14-cv-2031 (ABJ) (D.D.C. Oct. 5, 2018). Brown further clarified that he asked for an accommodation "in order to discuss damage reports

*2. FHA Claims*

Brown also brings two claims under the FHA, alleging that by "misrepresenting material facts about the standard of care for water damage," Nationwide both "[r]efus[ed] to accommodate in the provision of services based on disability" and "create[d] a *hostile environment*." SAC ¶¶ 62, 65, 67 (citing 42 U.S.C. §§ 3604(b), 3617).[5]

The statute of limitations for FHA claims is two years. See 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice."). The FHA tolls the limitations period while an administrative complaint is pending, id. § 3613(a)(1)(B), but Brown does not claim that he initiated administrative proceedings in this case. Instead, he contends that Nationwide violated 42 U.S.C. § 3604 by "advising [him] to experiment with various chemicals based upon [his] cognitive disability[,] thereby refusing to communicate effectively about water damage procedures." Opp'n at 19. But again, those purported communications took place in 2016. See, e.g., SAC ¶¶ 19 (alleging that Nationwide's claims adjuster told him to use "disinfectant, garbage bags, and rags"), 24 (alleging that the adjuster told Brown that "[e]ven persons with a mental disability can use disinfectant to clean water contamination"), 42 (noting that Nationwide "den[ied] [his] request for *effective communication* about water damage procedures" in 2016).

---

associated with [a] sudden water leak that occur[red] during [his] absence," but Nationwide "refus[ed] to accommodate." Id. at 4.

[5] The complaint fails to specify how, if at all, Nationwide's water remediation instructions were the result of discriminatory intent or constitute an adverse action taken in response to protected activity.

To be sure, Brown's complaint alleges in passing that Nationwide denied his "ongoing requests for *effective communication* about water remediation." Id. ¶ 62; see also id. ¶ 64 (alleging that Brown "repeatedly requested effective communication about water remediation[] from 2016 until 2024."). But at no point does Brown explain the timing or nature of his requests, whether they differed from his original request, the response provided by Nationwide, or any other information that would allow the Court to determine whether the complaint alleged a "continuing violation" of the FHA. See Reese v. Park Place Condo. Homeowners Ass'n I, No. 22-cv-2660 (CRC), 2023 WL 5833678, at *3 (D.D.C. Sept. 8, 2023) (explaining that the "continuing violations doctrine" permits a plaintiff to challenge "an unlawful practice [under the FHA] that continues into the limitations period" (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 380–81 (1982)). The Court is left only with the facts alleged in the complaint, which relate to Brown's communications with Nationwide in 2016 (when it allegedly failed to "effectively communicate") and 2024 (when it did "effectively communicate"). See Henthorn v. Dep't of Navy, 29 F.3d 682, 684 (D.C. Cir. 1994) (noting that "liberal as the[] pleading standards [for pro se plaintiffs] may be," the Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" (citation omitted)); Richardson v. United States, 193 F.3d 545, 549 (D.C. Cir. 1999) (acknowledging that the Court need not "cull through every filing of a *pro se* litigant to preserve a defective complaint"). Thus, Brown's FHA claims are also barred by the applicable statute of limitations.

    3. *D.C. Law Claims*

Finally, Brown alleges that Nationwide's actions amounted to (1) unfair or deceptive trade practices under the CPPA; (2) intentional infliction of emotional distress ("IIED"); and (3) a breach of contract. See SAC ¶¶ 70–72, 76–82.

9

All of these claims are subject to a three-year limitations period. See D.C. Code § 12-301 (providing a three-year limitations period for actions based "on a simple contract" or "for which a limitation is not otherwise specially prescribed").[6] Here too, the basis for Brown's claims are the alleged statements by Nationwide's claims adjuster in 2016. See, e.g., SAC ¶¶ 72 (alleging that Nationwide violated the CPPA by "advis[ing] [Brown] to use disinfectant" after learning of his "impaired executive function"), 78 ("Nationwide's advising [Brown] to use disinfectants created an environmental hazard . . . to inflict severe emotional distress"), 82 ("Nationwide violated . . . the insurance contract[] by . . . allowing microorganisms to contaminate [Brown's] home."). Brown has asserted no basis for statutory tolling of the limitations period, see D.C. Code § 12-302(a), and D.C. law ordinarily "does not recognize an equitable tolling exception to the statute of limitations," Bundy v. Sessions, 387 F. Supp. 3d 121, 125 (D.D.C. 2019) (quoting Johnson v. Marcheta Invs. Ltd. P'ship, 711 A.2d 109, 112 (D.C. 1998)), aff'd, 812 F. App'x 1 (D.C. Cir. 2020).

In his opposition brief, Brown suggests that Nationwide is "estopped" from asserting a statute of limitations defense under the "lulling doctrine." Opp'n at 2. That doctrine applies if the defendant "has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run." Bailey v. Greenberg, 516 A.2d 934, 937 (D.C. 1986) (quoting Hornblower v. George Washington Univ., 31 App. D.C. 64, 75 (D.C. Cir. 1908)). D.C. courts "have interpreted this principle narrowly." Id. Specifically, the defendant

---

[6] IIED claims ordinarily fall within D.C.'s three-year residual limitations period. See D.C. Code § 12-301(8). However, "an IIED claim that is intertwined with any of the causes of action for which a period of limitation is specifically provided . . . is subject to the limitation period for the intertwined claim." Alston v. District of Columbia, 772 F. Supp. 3d 43, 69 (D.D.C. 2025) (citation and internal quotation marks omitted). In this case, the longest limitations period for any potentially "intertwined" claim is three years, so the result is the same.

10

"must have done something that amounted to an affirmative inducement to [the] plaintiff[] to delay bringing action." Id. (quoting Hornblower, 31 App. D.C. at 75). While hard to discern, it appears that Brown's "lulling" argument rests on his claim that Nationwide "misrepresented material facts about water damage procedures[] by waiting five months to investigate [his] water damage claim."[7] Opp'n at 26; see also id. at 1 (asserting that Nationwide's "statute of limitations argument . . . derives from *omissions of fact* about [Nationwide's] breach of duty to investigate [Brown's] water damage claim"). But any delay by Nationwide would not be enough to invoke the doctrine, as "mere silence, failure to disclose, or ignorance of facts establishing a claim generally do not rise to the level of affirmative misconduct." East v. Graphic Arts Indus. Joint Pension Tr., 718 A.2d 153, 157 (D.C. 1998) (citation and internal quotation marks omitted). Without evidence that Nationwide's delay constituted "affirmative misconduct," it is free to invoke the statute of limitations.[8] Id.

* * *

Because all of Brown's claims accrued in 2016, and there is no basis to toll the limitations period, the Court concludes that they are time-barred and must be dismissed with prejudice. See Firestone, 76 F.3d at 1209.

---

[7] Brown later contends that Nationwide's purported delay was only three months. See Mot. to Stay at 3.

[8] To the extent Brown asserts that his claims did not accrue because Nationwide "concealed material facts related to its wrongdoing," the same result would hold, as he has not identified "an affirmative act of concealment." Williams v. Conner, 522 F. Supp. 2d 92, 100 (D.D.C. 2007) (quoting Sprint Commc'ns Co., LP v. FCC, 76 F.3d 1221, 1226 (D.C. Cir. 1996)).

11

B. <u>Brown's Motion to Stay Proceedings</u>

As an alternative to dismissal, Brown asks the Court to stay the case so that he may obtain counsel to "consolidate [his] arguments into an organized brief" and "identify[] the facts and the violations of state and federal law by Nationwide." Mot. to Stay at 1. Under this Court's local rules, the Court may appoint an attorney from the Civil Pro Bono Panel to represent a pro se litigant proceeding *in forma pauperis*. <u>See</u> Local Civ. R. 83.11(b)(3). When considering an appointment, the Court should weigh several factors, including the "[p]otential merit of the *pro se* party's claims" and the "benefit the Court may derive from the assistance of the appointed counsel." Local Civ. R. 83.11(b)(3)(ii), (iv). Because Brown's claims are time-barred, the Court does not find that the appointment of counsel is warranted here.

The Court also denies Brown's request for a stay so that he may retain counsel and bring entirely *new* claims against Nationwide. In his stay motion—which was his seventh filing after the motion to dismiss briefing was completed—Brown claims that Nationwide purportedly failed to provide "loss of use payments" under his insurance contract. Mot. to Stay at 4. He adds that Nationwide "fraudulently concealed the availability of coverage *for loss of use*" of his residence. <u>Id.</u> at 8. If Brown wishes to obtain counsel and bring new claims against Nationwide that are beyond the scope of this case, he may initiate a new lawsuit. But the Court does not find it necessary to prolong this case any further. <u>See</u> <u>Dietz v. Bouldin</u>, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

## IV. Conclusion

For the foregoing reasons, the Court will grant Nationwide's [23] Motion to Dismiss and deny Brown's [38] Petition for Reconsideration and Motion to Stay Proceedings.  A separate Order shall accompany this memorandum opinion.

                                                CHRISTOPHER R. COOPER
                                                United States District Judge

Date:  <u>February 26, 2026</u>